Kevin Mahoney, Esq. (SBN: 235367)
kmahoney@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Blvd., Ste. 814
Long Beach, CA  90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Attorneys for Plaintiff MARIO ZAMARRIPA, as an individual and on behalf of all similarly situated employees

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ZAMARRIPA, as an individual and on behalf of all similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>MONDELĒZ GLOBAL, LLC and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 8:16-cv-02193 - DOC-DFM<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Assigned for all purposes to:<br>Hon. David O. Carter; Courtroom 9D<br><br>Date:        February 4, 2019<br>Time:        12:00 p.m.<br>Dept.:        9D |

- 1 -

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 4, 2019 at 12:00 p.m., in Courtroom 9D of the United States District Courthouse located at 751 W. Santa Ana Blvd., CA 92701, pursuant to the Court and FRCP 23, Plaintiff MARIO ZAMARRIPA ("Plaintiffs"), will move the Court for an order granting preliminary approval of the proposed class action settlement between Plaintiff and Defendant MONDELĒZ GLOBAL, LLC ("MONDELĒZ" or "Defendant") (collectively, the "Parties") (which is memorialized in the Parties' Joint Stipulation of Class Action Settlement ("Settlement Agreement").

Plaintiff will further move the Court for an Order:

1.     Certifying for settlement purposes a class of all non-exempt employees employed by, or formerly employed by, Mondelēz Global, LLC, in the positions of Merchandiser, Sales Representative, and related positions in the State of California during the period of October 21, 2012 through Preliminary Approval (the "Class");

2.     Appointing MARIO ZAMARRIPA as Class Representatives for settlement purposes;

3.     Appointing Plaintiffs' Counsel, Kevin Mahoney of MAHONEY LAW GROUP, APC, as Class Counsel for settlement purposes;

4.     Approving the proposed Notice of Class Action Settlement ("Notice") to be mailed to the Class Members;

5.     Approving the opt out and objection procedures provided in the Settlement Agreement and set forth in the Notice;

6.     Directing Defendant MONDELĒZ GLOBAL, LLC to furnish the Settlement Administrator within fourteen (14) calendar days after the Court grants preliminary approval of the Settlement a database containing the following information for each Class Member: (1)

- 2 -

name; (2) last known mailing address; (3) last known telephone number (or mobile number if there is no home number on file); (4) social security number (last four digits only); and (5) total number of workweeks worked for Defendant in California during the Class Period as a Merchandiser, Sales Representative, or similar position; and

7.     Setting a Final Approval Hearing for TBD by the Court.

The motion will be based upon this notice, the attached memorandum of points and authorities, the Declaration of Kevin Mahoney concurrently filed herewith, the records and files in this action, and any other further evidence or argument that the Court may properly receive at or before the hearing.

Dated: January 28, 2019          **MAHONEY LAW GROUP, APC**

By:     _/s/Kevin Mahoney_
Kevin Mahoney
Attorney for Plaintiff MARIO
ZAMARRIPA as an individual and on
behalf of all similarly situated employees

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL FOR CLASS
ACTION SETTLEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

  A.  The Parties ............................................................................... 2

  B.  Factual and Procedural History ................................................... 2

  C.  Plaintiffs' Claims. ...................................................................... 3

    1.   The Overtime Claim ........................................................... 3

    2.   The Meal Break Claim ........................................................ 4

    3.   The Rest Break Claim ......................................................... 6

    4.   The Wage Statement Claim................................................... 6

    5.   The Waiting Time Claim...................................................... 7

    6.   Failure to Reimburse Claim ................................................. 8

    7.   The UCL Claim ................................................................. 8

    8.   The Private Attorney General Act .......................................... 8

III.  SUMMARY OF SETTLEMENT TERMS ................................................. 9

IV.  CLASS ACTION SETTLEMENT APPROVAL PROCEDURE................. 11

  **A.  The Proposed Settlement Was the Product of Serious,  Informed, Non-collusive Negotiations** ............................................................... 13

    1.   The Extent of Discovery Completed and The Stage of Proceedings........ 13

  **B.  The Proposed Settlement Has No Obvious Deficiencies** .......................... 14

  **C.  The Proposed Settlement Does Not Improperly Grant Preferential Treatment  to the Named Plaintiffs or Segments of the Class**...................... 14

  **D.  The Proposed Settlement Falls Within the Range of Possible   Approval** 15

    1.   The Substantial Amount Offered in Settlement and the Risk, Expense and Complexity of Further Litigation Weigh in Favor of Preliminary Approval.. 15

**VII.  CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE**................................................................................ 18

**A.  Numerosity** ................................................................................ 19

**B.  Common Issues of Law and Fact** .................................................... 19

**C.  Typicality** ................................................................................. 20

**D.  Adequacy of Representation**.......................................................... 20

- 1 -

**E.  Conditional Certification Pursuant to FRCP 23(b)(3) is Appropriate as Common Questions Predominate**...................................................................... 21

**VIII. THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE PROCESS**........................................................................................ 22

**IX.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED**........ 24

X.  SETTLEMENT AGREEMENT AND ACCOMPANYING DOCUMENTS 24

XI.    CONCLUSION ............................................................................. 25

TABLE OF CONTENTS AND AUTHORITIES

# TABLE OF AUTHORITIES

Federal Cases

*Alberto v. GMRI, Inc.*, (E.D. Cal. 2008) 252 F.R.D. 652 ............................... 12, 13

*Alcantar v. Hobart Service*, (9th Cir. 2015) 800 F.3d 1047 ................................... 17

*Amchem Products, Inc. v. Windsor*, (1997) 521 U.S. 591 ..................................... 22

*Arnold v. United Artists Theatre Circuit, Inc.*, (N.D. Cal. 1994) 158 F.R.D. 439  19

*Class Plaintiffs v. City of Seattle*, (9th Cir. 1992) 955 F.2d 1268 ......................... 13

*General Telephone Co. of Southwest v. Falcon*, (1982) 457 U.S. 147................. 20

*Hanlon v. Chrysler Corp.*, (9th Cir. 1998) 150 F.3d 1011 ............ 13, 19, 20, 21, 22

*In re Southern Ohio Correctional Facility*, (S.D. Ohio 1997) 175 F.R.D. 270 .... 15

*In re Tableware Antitrust Litigation*, (N.D. Cal. 2007) 484 F.Supp.2d 1078 . 13, 15

*Ingram v. The Coca-Cola Co.*, (N.D. Ga. 2001) 200 F.R.D. 685.......................... 15

*Lerwill v. Inflight Motion Pictures, Inc.*, (9th Cir. 1978) 582 F.2d 507 ............... 19

*Linney v. Cellular Alaska Partnership*, (9th Cir. 1998) 151 F.3d 1234 ............... 14

*Molski v. Gleich*, (9th Cir. 2003) 318 F.3d 937 ............................................... 12, 13

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
    (9th Cir. 1982) 688 F.2d 615............................................................................... 15

*Rodriguez v. West Publishing Corp.*, (9th Cir. 2009) 563 F.3d 948...................... 16

*Rutti v. Lojack Corp., Inc.*, (9th Cir. 2010) 596 F.3d 1046 ................................... 17

*Van Vranken v. Atlantic Richfield Co.*, (N.D. Cal. 1995) 901 F.Supp. 294 .......... 15

*Villegas v. J.P. Morgan Chase & Co.*, (N.D. Cal., Nov. 21, 2012, No. CV 09-
    00261 SBA EMC) 2012 WL 5878390.............................................................. 13

*Wehner v. Syntex Corp.*, (N.D. Cal. 1987) 117 F.R.D. 641................................... 20


State Cases

*McGhee v. Bank of America*, (1976) 60 Cal.App.3d 442 ...................................... 21

State Statutes

Bus. & Prof. Code, § 17200 .......................................................................... 5, 3, 8

Civ. Code, § 1542 ...................................................................... 11

Lab. Code, § 201 ...................................................................... 7, 8

Lab. Code, § 202 ......................................................................... 7

Lab. Code, § 203 ........................................................... 7, 8, 18, 20

Lab. Code, § 226 (a) ................................................................ 7, 18

Lab. Code, § 226.7 ...................................................................... 5

Lab. Code, § 1174 ....................................................................... 7

Lab. Code, § 510,(b) .................................................................. 17

Lab. Code, § 1194 ....................................................................... 3

Lab. Code, § 2698 .............................................................. 5, 3, 8

Lab. Code, § 2699,(e)(2) ............................................................ 16


Federal Rules

Fed. Rules Civ.Proc., rule 23, 28 ............................. 12, 22, 23, 24

Fed. Rules Civ.Proc., rule 23 (a)(1) .......................................... 19

Fed. Rules Civ.Proc., rule 23(e)(1)(B) ...................................... 23

Fed. Rules Civ.Proc., rule 23(b)(3) ........................................... 22

Fed. Rules Civ.Proc., rule 23 (a) .......................................... 19, 22


Other Authorities

*Manual for Complex Litigation,* § 21.632 (4th ed. 2004) ..................... 12

TABLE OF CONTENTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff MARIO ZAMARRIPA ("Plaintiff") submits this memorandum in support of his Motion for Preliminary Approval of Class Action Settlement.

## I.   INTRODUCTION

The Parties hereto have reached a settlement in this matter, which is subject to the approval of this Court. Plaintiff alleges claims against Defendant MONDELĒZ GLOBAL, LLC ("MONDELĒZ" or "Defendant") for a wide range of wage-hour violations, including failure to pay overtime wages; failure to provide meal periods; failure to provide rest periods; failure to keep accurate payroll records; failure to pay wages upon ending employment; failure to indemnify for expenditures; unfair competition (Bus. & Prof. Code, § 17200); and violation of the Private Attorney General Act (Lab. Code, § 2698 et. seq.) as well.

Defendant contends that its written policies, including, but not limited to, payroll, compensation, travel time, meal and rest breaks, and indemnification policies, and its employment practices comply with the requirements of California law. Subject to this Court's approval, Plaintiff has settled his claims against Defendant on behalf of himself, and any of their past, present, and future parents, affiliates, subsidiaries, and other persons acting on their behalf, and a Settlement Class of all non-exempt employees employed by, or formerly employed by, Mondelēz in the positions of Merchandiser, Sales Representative, and related positions in the State of California during the period of October 21, 2012 through the date of preliminary approval.

The proposed Settlement satisfies all of the criteria for preliminary settlement approval under California law and falls well within the range of permissible approval.  Accordingly, Plaintiff requests that the Court provisionally certify the proposed Settlement Class for settlement purposes only, grant preliminary approval of the proposed Settlement, direct distribution to the Settlement Class of Notice of the Settlement and the opportunity to "opt out" of and object to the settlement, and

schedule a final approval hearing.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Parties

MONDELĒZ is a global company that provides snack foods around the world. "Our purpose and vision is to lead the future of snacking around the world by offering the right snack for the right moment, made the right way. Over 80,000 employees support this effort by manufacturing and marketing delicious food and beverage products for consumers in approximately 160 countries around the world. We are a world leader in biscuits, chocolate, gum candy and powered beverages. We hold the No. 1 position globally in biscuits and candy as well as the No. 2 position in chocolate and gum. About 85% of our annual revenue is generated in attractive snack categories, and nearly three-quarters of our sales come from outside of North America." (www.mondelezinternational.com)

Plaintiff Mario Zamarripa was employed as a sales representative for MONDELĒZ from approximately 2011 through 2015. As a sales representative, Plaintiff was required to travel throughout Southern California to perform his job duties, which consisted of visiting grocery stores and supermarkets, and marketing Defendant's products.

### B.      Factual and Procedural History

On or about October 21, 2016, Plaintiff filed a class action lawsuit against Defendant in the Superior Court of California, County of Orange on behalf of all current and former non-exempt employees in the position of merchandisers, sales representatives and related positions employed by Defendant. The lawsuit alleged the following causes of action: failure to pay overtime wages; failure to provide meal periods; failure to provide rest periods; failure to keep accurate payroll records; failure to pay wages upon ending employment; failure to indemnify for expenditures; unfair competition (Bus. & Prof. Code, § 17200, e.t seq.); and violation of the Private Attorney General Act (Lab. Code, § 2698 et. seq.)

2

("PAGA").

On December 12, 2016, Defendant removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). The Parties engaged in written discovery. On or about July 26, 2017, the Parties attended mediation with mediator Robert J. Kaplan, Esq. Prior to the mediation, Defendant produced a sampling of pay stubs and time records of putative class members, as well as its policies and procedures and employee handbook. The Parties were unable to reach a settlement at mediation, however, the Parties continued with good faith arm's-length settlement negotiations through Mr. Kaplan, and signed a memorandum of understanding in May 2018. Following that, the Parties were in continuing discussions concerning the long-form settlement documents until January 14, 2019. Ultimately, the Parties reached an agreement to resolve this matter. Plaintiff now files the instant motion.

**C.   Plaintiffs' Claims.**

1.   <u>The Overtime Claim</u>

Lab. Code, § 1194 provides as follows:

(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation . . .

Section 3 of Industrial Wage Commission ("IWC") Wage Order No. 3 provides that "[e]mployment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime" at a premium rate.

Plaintiff contends that the minimum wage and overtime statute and regulations were violated, among other things, when Defendant failed to account for all travel time and administrative time worked by Class Members.

Specifically, Plaintiff contends that Defendant required Class Members to perform various duties at home, which consisted of scheduling, taking calls after

3

MEMORANDUM OF POINTS AND AUTHORITIES

hours, and performing other necessary work, without recording such time on their time records. Plaintiff further contends that Defendant did not compensate Class Members for all time spent driving from home to their first store (and from their last store back home). This required Class Members to conduct a significant amount of work off-the-clock ("OTC"). (Declaration of Kevin Mahoney "Mahoney Decl." ¶ 6.)

Defendant contends that its policies are clear that Class Members were required to record all working time, including all "Administrative Time," which includes time spent scheduling, taking calls after hours, and performing other work incidental to Class Members' daily routes. As for commute time, Defendant implemented a policy that all sales representatives would be compensated for all time driving from home to their first store (and from their last store back home) after driving 40 miles, and that all merchandisers would be compensated for all time after driving 25 miles. The Parties understand that Defendant is not required to compensate employees for commuting "reasonable distances" to their worksites and that there is minimal guidance on the interpretation of a "reasonable distance" for commuting purposes. However, Defendant believes that 40 miles for sales representatives and 25 miles for merchandisers are both reasonable distances and, in any event, sales representatives and merchandisers work close to their homes and have short commutes. Defendant further believes it paid all employees for all hours worked at the proper rate of pay and that required overtime was properly paid to all non-exempt employees. Defendant further contends that any pay errors were inadvertent and represented individual circumstances not suitable for class action treatment. (Mahoney Decl. ¶ 6.)

### 2. The Meal Break Claim

California Labor Code section 226.7 provides that employees are entitled to "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal period or rest period is not provided" in accordance with

MEMORANDUM OF POINTS AND AUTHORITIES

California law.

Section 11 of Wage Order No. 3 provides in pertinent parts:

(A)    No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than thirty (30) minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee.  In the case of employee covered by a valid collective bargaining agreement, the parties to the collective bargaining agreement may agree to a meal period that commences after no more than six (6) hours of work.

(B)    An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty (30) minutes, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Plaintiff contends that Defendant failed to meet its obligations with respect to these meal period requirements. (Mahoney Decl. ¶ 7.)  Specifically, Plaintiff contends that Defendant did not provide meal periods to its field-based employees and, when meal periods were not provided, Defendant failed to pay one hour of compensation to those employees.

Defendant contends that its current meal period policy complies with California law.  Defendant also contends that its meal period practices are, and always have been, lawful in that non-exempt employees have been "provided" meal periods as required. (Mahoney Decl. ¶ 7.)  Defendant maintains that it was not required to ensure Plaintiff or other Class Members were *taking* their meal periods (especially given these employees were on the road without supervision), and that its lawfully-compliant policies and reminders from managers were sufficient to ensure that meal periods were *provided* to all Class Members.  Defendant contends that Plaintiff's own time records showing meal period on all but two days during his entire employment prove that he was provided with compliant meal periods, but Plaintiff disputes this notion.

The Parties dispute the certifiability of this claim.

MEMORANDUM OF POINTS AND AUTHORITIES

### 3. The Rest Break Claim

Section 12 of Wage Order No. 3 provides that "every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." Plaintiff contends that Defendant failed to meet its obligations with respect to these rest period requirements. (Mahoney Decl. ¶ 7.) Specifically, Plaintiff contends that Defendant did not provide rest periods to its field-based employees and, when rest periods were not provided, Defendant failed to pay one hour of compensation to those employees.

Defendant contends that it has always "authorized and permitted" its non-exempt employees to take a ten (10)-minute rest break per four hours of work or major fraction thereof. (Mahoney Decl. ¶ 7.) As with meal periods, Defendant maintains that it was not required to ensure Plaintiff or other Class Members were *taking* their rest periods, and that its lawfully-compliant policies and reminders from managers were sufficient to ensure that rest periods were *provided* to all Class Members.

Again, the Parties dispute the certifiability of this claim.

### 4. The Wage Statement Claim

California Labor Code section 1174 requires employers to keep accurate "payroll records showing the hours worked daily by and the wages paid to . . . employees employed at the respective plants or establishments." California Labor Code section 226 (a) requires an employer to provide employees with accurate itemized statements.

Plaintiff contends that Defendant willfully failed to make or keep accurate payroll records for Plaintiff and Plaintiff Class members including, but not limited to alleging that Plaintiff and the Class' wage statements were inaccurate because they did not accurately reflect the hours worked due to the alleged unpaid travel

time and time spent completing administrative tasks. (Mahoney Decl. ¶ 9).

Defendant contends that it has complied with all such requirements with respect to payroll records at all times, including that it fully complied with its obligations to pay minimum wage and overtime.  (Mahoney Decl. ¶ 9).

To the extent Defendant's alleged violations of California law as to Class Members' wage statements are derivative of Plaintiff's underlying claims, the Parties agree the success or failure of the wage statement claim will depend on the success or failure of the underlying claims.

### 5.   The Waiting Time Claim

California Labor Code section 201 requires immediate payment of earned and unpaid wages to discharged employees at the time of discharge.  California Labor Code section 202 requires payment of earned and unpaid wages to an employee who quits after giving a 72-hour prior notice at the time of quitting, and within 72 hours after quitting to an employee who quits without giving a 72-hour prior notice.  Under California Labor Code section 203 if an employer willfully failed to pay all wages earned and unpaid in accordance with California Labor Code sections 201 and 202, the wages shall continue until paid for up to 30 days.

Plaintiff contends that, by failing to include in the final pay checks to former employees the additional wages due to Defendant's failure to comply with meal and/or rest period requirements as well as additional straight time and overtime compensation relating to the travel time and administrative time, Defendant failed to pay all wages earned and unpaid to those former employees within the time frame prescribed by Labor Code sections 201 and 202. (Mahoney Decl. ¶ 8.)

Defendant denies any legal violations, and contend that even if any underlying liability is found, there was no "willful" violation to trigger section 203 liability, and moreover, that the determination of waiting time penalties for wages not timely paid upon separation itself requires individualized inquiries not suitable to class treatment.  (Mahoney Decl. ¶ 8.)

MEMORANDUM OF POINTS AND AUTHORITIES

### 6. Failure to Reimburse Claim

Plaintiff contends that Defendant failed to reimburse Plaintiff and Class Members for necessary business expenditures, including use of their personal Wi-Fi at home when utilizing the same for purposes of finishing work at home.

Defendant denies all liability and contends that the Class Members were reimbursed for all reasonable and necessary business expenditures and had the option to request reimbursement if they believed they incurred reasonable and necessary business expenses.

### 7. The UCL Claim

California Business and Professions Code section 17200 *et seq.* prohibits unlawful, unfair or fraudulent business acts or practices, as well as and unfair, deceptive, untrue or misleading advertising. Plaintiffs contend that the actions of the Defendant as described above are unlawful predicate acts and practices for purposes of establishing liability under the UCL.  Defendant contends its practices have been in compliance with applicable law as set forth above, and that Plaintiffs have no basis for asserting a claim under the UCL.

### 8. The Private Attorney General Act

California Labor Code sections 2698-2699 - The Private Attorneys' General Act of 2004 ("PAGA") provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency for a violation of the Labor Code, which may be recovered through a civil action by an aggrieved employee on behalf of himself or herself, and collectively on behalf of all other current or former employees. Plaintiff asserted that all of the claims in the Operative Complaint against Defendant, individually and on behalf of all aggrieved employees of the Class, in their capacity as private attorney general, and sought all statutory penalties available under the Labor Code.

Defendant contends its practices have been in compliance with applicable law as set forth above, and that Plaintiffs have no basis for asserting a claim under

PAGA. (Mahoney Decl. ¶ 10.)  The Parties agree the success or failure of Plaintiff's claim for penalties under PAGA will depend on the success or failure of the underlying claims.

## III.    SUMMARY OF SETTLEMENT TERMS

•    Defendant stipulates to certification of a Class for settlement purposes only, consisting of all non-exempt employees employed by, or formerly employed by, Mondelēz Global, LLC, in the positions of merchandiser, sales representative, and related positions in the State of California during the period of October 21, 2012 through preliminary approval;

•    There are an estimated 3,225 Class Members; this number cannot be finalized until after preliminary approval, when the Class Period closes;

•    The Parties agree that the Court shall determine the proper method to effectuate a release of federal claims from Class Members under the Fair Labor Standards Act ("FLSA");

•    Class Members may opt-out of the Settlement or object to the Settlement within thirty (30) days from the Notice Date;

•    After deducting Class Counsel fees and costs, Enhancement Awards to the Named Plaintiff, and Settlement Administration Costs from the Gross Settlement Amount, the Net Settlement Amount will be distributed and paid to Class Members that have submitted a claim form (if applicable) or to Class Members that have not opted out (if the Court determines that a claim form is not needed to effectuate a release of FLSA claims), with each Class Member's share to be determined based on the number of workweeks worked by the Class Member relative to the number of Workweeks worked by all Class Members during the Class Period (the details of the settlement calculation method are set forth in more detail in the Parties' Settlement Agreement);

•    Any Funds from Class Members who (1) are not located, (2) submit a valid and timely request for exclusion, and/or (3) fail to submit a valid and timely

Claim Form (if applicable), will be redistributed pro rata amongst all participating Class Members;

- Any Funds from uncashed checks will revert to the Department of Industrial Relations' Unpaid Wage Fund pursuant to the procedures for uncashed wage checks after one hundred and twenty (120) days;

- Administration will be handled by third-party administrator Phoenix Class Action Administration Solutions;

- The Settlement Administration Costs, which are estimated at seventeen thousand five hundred dollars ($17,500.00), will be paid out of the Gross Settlement Amount;

- Defendant will not oppose an application for collective Enhancement Awards in the amount of seven thousand five hundred dollars ($7,500.00) to the Named Plaintiff to be paid out of the Gross Settlement Amount;

- Defendant will not oppose Class Counsel's application for fees that is equal to or less than the amount of five hundred thousand dollars ($500,000.00), which is 1/3rd of the Gross Settlement Amount, plus Class Counsel's actual costs, not to exceed twenty thousand dollars ($20,000.00);

- As these terms are defined under the heading "Definitions," paragraph D, I, J, G, and page 9, paragraphs 4(a) of the Settlement Agreement, the "Plaintiffs" and "Class Members" will release and discharge the "Released Parties" from any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted based on the allegations made in Plaintiff's Complaint and/or First Amended Complaint;

- The Plaintiff and Class Members further agree that: (1) the "Released Parties" (as that term is defined in the Settlement Agreement), shall have no further or other liability or obligation to Plaintiff or any Class Member, or any other "Releasing Party" with respect to the "Released Claims" (as those terms are

defined in the Settlement Agreement); (2) the Plaintiff will provide a general release and waive all the protections of Civ. Code, § 1542 and all similar statutes and laws; and (3) to the fullest extent allowed by law, the Plaintiff and Class Members covenant not to assert a Released Claim against the Released Parties for any alleged violation of law occurring during the Class Period;

- The agreement between the Parties contemplates that Plaintiff will file a First Amended Complaint which will include claims under the Fair Labor Standards Act for unpaid wages as well as unpaid overtime; and

- Pending this Court's final determination of whether the proposed Settlement will be approved, the Plaintiff and all members of the Class, and anyone acting on their behalf who have actual knowledge of this injunction, are barred and enjoined from instituting, commencing, or continuing to prosecute any action in this Court, any other state court, or any arbitration or mediation proceeding or any other similar proceeding, against any Released Party that asserts any claims  that would be released and discharged upon final approval of the Settlement.

## IV.    CLASS ACTION SETTLEMENT APPROVAL PROCEDURE

A class action may not be dismissed, compromised, or settled without the approval of the court. (*See* Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(e).) Judicial proceedings have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation,* § 21.632 (4th ed. 2004).  The *Manual*'s settlement approval procedure describes two distinct steps:

1.    The Court first conducts a preliminary fairness evaluation, if the Court preliminarily approves the settlement as falling within the range of possible settlement approval, notice to the class is then disseminated and a "fairness" or final approval hearing is scheduled.

2.    A "formal fairness hearing," or final settlement approval hearing, is

1   held, at which class members may be heard regarding the settlement, and at which
2   evidence and argument concerning the fairness, adequacy, and reasonableness of
3   the settlement is presented. (*Id.*; Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(e)(2).)

4        In making a fairness determination, a Court must evaluate factors such as: (1)
5   the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration
6   of further litigation; (3) the risk of maintaining class action status throughout trial;
7   (4) the amount offered in settlement; (5) the extent of discovery completed and the
8   stage of the proceedings; (6) the experience and views of counsel; (7) the presence
9   of a governmental participant; and (8) the reaction of class members to the proposed
10  settlement. (*Molski v. Gleich* (9th Cir. 2003) 318 F.3d 937, 953)

11       Given that some of the above referenced factors cannot be fully determined
12  until the Court conducts a final fairness hearing, "a full fairness analysis is
13  unnecessary at this stage." (*Alberto v. GMRI, Inc.* (E.D. Cal. 2008) 252 F.R.D. 652.)
14  Accordingly, the court must "simply conduct a cursory review of the terms of the
15  parties' settlement for the purpose of resolving any glaring deficiencies before
16  ordering the parties to send the proposal to class members." (*Id.* at p. 665.)

17       "Rather, preliminary approval of a settlement and notice to the proposed class
18  is appropriate: if [1] the proposed settlement appears to be the product of serious,
19  informed, non-collusive negotiations, [2] has not obvious deficiencies, [3] does not
20  improperly grant preferential treatment to class representatives or segments of the
21  class, and [4] falls within the range of possible approval.'" (*Villegas v. J.P. Morgan
22  Chase & Co.* (N.D. Cal., Nov. 21, 2012, No. CV 09-00261 SBA EMC) 2012 WL
23  5878390, at *5 quoting *In re Tableware Antitrust Litigation* (N.D. Cal. 2007) 484
24  F.Supp.2d 1078, 1079. *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011,
25  1026; *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276 (in
26  context of class action settlement, appellate court cannot "substitute [its] notion of
27  fairness for those of the [trial] judge and the parties to the agreement," and will
28  reverse only upon strong showing of abuse of discretion.)

Accordingly, a court's decision to approve a class action settlement may be reversed only upon a showing of clear abuse of discretion. (See *Hanlon*, *supra*, 150 F.3d 1011.) By this motion, Plaintiff requests that the Court take the first step in the settlement approval process, and grant preliminary approval of the Settlement.

**A.    The Proposed Settlement Was the Product of Serious, Informed, Non-collusive Negotiations**

The proposed Settlement in this case was reached after extensive and informed arm's-length negotiations with experienced class action mediator Rob Kaplan, Esq.

1.    The Extent of Discovery Completed and The Stage of Proceedings

In making a fairness determination, the Court looks to what discovery has been completed and the procedural posture of the litigation.  (*Molski*, *supra*, 318 F.3d at p. 953.)  When litigation has proceeded to the point where "the parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approval.  (*Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1239.

While this case has not been litigated for years, the Parties agreed to try to resolve this matter. As a result, the Parties engaged in formal discovery on class certification issues.  Prior to mediation, Plaintiff was given access to a significant amount of information of the alleged violations, including timekeeping sheets, payroll, and compensation data, and Defendant's written policies and procedures. (Mahoney Decl. ¶ 5.)

Additionally, the proposed Settlement was reached after arm's-length negotiations after multiple rounds of settlement negotiations between the Parties. (Mahoney Decl. ¶5.) Plaintiffs were provided with a wealth of information, including the total class size and the total number shifts worked during the liability period.  There certainly was no collusion in the negotiations.

MEMORANDUM OF POINTS AND AUTHORITIES

### B.    The Proposed Settlement Has No Obvious Deficiencies

A summary of the settlement terms is described above, and shows that there are no obvious deficiencies. The proposed Settlement offers substantial monetary benefits to participating class members in exchange for a release of certain wage and hour claims.  The average net distribution to individual Class Members is approximately two hundred ninety-three dollars and zero cents ($293.00). (Mahoney Decl. ¶ 13.)

Class Members will be mailed a Notice and will have the ability to object to any of the terms of the proposed Settlement or exclude themselves from participating in the proposed Settlement.  Furthermore, the proposed Settlement is "all-in," and no monies will revert back to Defendant.

### C.    The Proposed Settlement Does Not Improperly Grant Preferential Treatment  to the Named Plaintiffs or Segments of the Class

The proposed service enhancement awards to Plaintiff Mario Zamarripa in the amount of seven thousand five hundred dollars ($7,500.00) is appropriate in this matter and collectively equals .005% of the proposed Settlement.  "Courts routinely approve incentive awards to compensate named Plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." (*Ingram v. The Coca-Cola Co.* (N.D. Ga. 2001) 200 F.R.D. 685, 694 (quoting *In re Southern Ohio Correctional Facility* (S.D. Ohio 1997) 175 F.R.D. 270, 272). In *Ingram*, the court approved significant incentive awards to each named Plaintiff in recognition of the services he or she provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. (See *Ingram*, *supra*, 200 F.R.D. at p. 694; see also *Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294 (approving $50,000 participation award).)

In this case, Plaintiff Mario Zamarripa has expended significant time assisting in the prosecution of this action and was instrumental in securing the

MEMORANDUM OF POINTS AND AUTHORITIES

proposed Settlement.  Plaintiff Zamarripa searched for documents relevant to the prosecution of this case and regularly communicated with Class Counsel.

Additionally, service enhancements are warranted in this matter as the Named Plaintiff has agreed to a much broader release than Class Members, as set forth more fully on page 14, paragraph 5 of the Settlement Agreement.

**D.    The Proposed Settlement Falls Within the Range of Possible Approval**

In evaluating whether the proposed Settlement is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." (*In re Tableware Antitrust Litigation*, *supra*, 484 F.Supp.2d at p. 1080.) "Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes." (*Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 624.) In this matter, the proposed settlement clearly falls within the range of permissible approval.

1.    <u>The Substantial Amount Offered and the Risk and Expense of Further Litigation Weigh in Favor of Preliminary Approval</u>

The proposed Settlement delivers immediate and substantial benefits to the Class.  Specifically, the proposed Settlement calls for Defendant to pay one million five hundred thousand dollars ($1,500,000.00) to roughly 3,225 current and former employees.  Importantly, the proposed Settlement requires Defendant to pay the entire gross settlement amount, with no monies reverting back to Defendant. The proposed Settlement will provide average net distributions to individual employees in the range of two hundred ninety-three dollars and zero cents ($293.00). (Mahoney Decl. ¶ 13.) This is a significant amount of money to employees who earn on average between $13.82 and $20.81 per hour, many of whom work part time.  Settlement will bring real money to class members.

Prior to reaching this proposed settlement, Plaintiff estimated Defendant's total maximum exposure at approximately four million one hundred sixty-seven

thousand one hundred fifty-one dollars ($4,167,151.00.00) [1]. (Mahoney Decl. ¶ 11.) This included Defendant's potential exposure for Plaintiffs' Wage Statement Claim as well as waiting time penalties pursuant to California Labor Code.

While Plaintiff was confident in their ability to certify the proposed classes, the risk, expense, and complexity of continued litigation all support preliminary approval of the proposed Settlement.   There were many unresolved legal and procedural issues and Defendant strongly argued that class certification in this matter was inappropriate.

The Parties' settlement discussions revolved around the issue of whether Defendant was required to compensate Plaintiffs and Class Members for a specific amount of drive time.  "An employee's commute is not typically compensable under California labor law, even 'when the employee commutes in a vehicle that is owned, leased, or subsidized by the employer.'" (*Alcantar v. Hobart Service* (9th Cir. 2015) 800 F.3d 1047, 1054 (quoting Lab. Code, § 510,(b)).   Commute time is compensable only when employees are required to spend such time under the control of the employer in that they cannot engage in personal affairs. (*See Rutti v. Lojack Corp., Inc.* (9th Cir. 2010) 596 F.3d 1046, 1061–62 (commute time compensable where employee "was *required* to drive the company vehicle, could *not* stop off for personal errands, could *not* take passengers, was required to drive the vehicle *directly* from home to his job and back, and could *not* use his cell phone while driving") (emphasis in original).)

Here, Defendant's policy provided that sales representatives would be compensated for all time driving from home to their first store (and from their last store back home) after driving 40 miles, and merchandisers would be compensated

---

[1] The exclusion of interest and penalties from the fairness evaluation is proper because, first, PAGA penalties are discretionary (*see* Lab. Code, § 2699,(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified in this part…")), and, second, courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration. (*See Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 955.)

MEMORANDUM OF POINTS AND AUTHORITIES

for all time after driving 25 miles.  In creating this policy, Defendant assessed the state of the law, administrative guidance, and its own business realities and determined that 40 miles for Sales Representatives and 25 miles for Merchandisers was a reasonable distance for a commute.  Further, Defendant's policy permits sales representatives to use their company vehicle for personal use, including running errands and transporting non-employee passengers on their commutes, and even on vacation and to conduct personal affairs.

Plaintiff alleged that Defendant's determination of 40 miles for sales representatives and 25 miles for merchandisers was arbitrary and did *not* constitute a reasonable distance for a commute. Plaintiff contends that Defendant was required to compensate Plaintiff and the Class for the entirety of each Class Member's commute, or, at a minimum, make an individual assessment as to each Class Member's route to determine a reasonable distance for the commute.  Defendant's failure to pay commute time would derivatively entitle Plaintiff and Class Members to wage statement penalties and waiting time penalties pursuant to Lab. Code, § 226, and §203 respectively, as well as PAGA penalties.  (Mahoney Decl. ¶ 6).

Given this dispute and the uncertainty in the law, both Parties recognized the risk in continuing with the litigation, both from a class certification and from a merits perspective.  For Defendant, there was a clear risk that if Plaintiff prevailed in his Motion for Class Certification, Defendant could be liable for unpaid wages to potentially thousands of employees, as well as derivative penalties.  For Plaintiff, there was clear risk that if Defendant defeated Plaintiff's Motion for Class Certification, or the court found the policy was compliant, class members would simply not receive *any* monetary recovery and would be forced to bring individual wage claims to protect their rights.  Litigating and proving the amount of wages due to each individual class member would be expensive, time-consuming and an extremely uncertain proposition.  A thorough evaluation of each and every time record for all employees during the class period would be a financially monumental

task.

Additionally, even if Plaintiff was successful in certifying the proposed classes, Defendant asserted a multitude of defenses as to liability and damages including, but not limited to, records showed Plaintiff and Class Members actually took their meal periods; Plaintiff and Class Members were paid for drive time and "Administrative Time"; many Class Members had very short commutes that would likely not trigger any obligation to pay; Plaintiff and Class Members did not suffer actual injury pursuant to California Labor Code § 226; Defendant did not willfully or intentionally withhold payment of wages pursuant to Lab. Code, § 203; and Defendant maintained accurate payroll records.

If Plaintiff was to certify the proposed classes, litigation would continue for possible years on merits and damage issues. Although Plaintiff is confident that any trial would be meritorious and successful, he is not blind to the significant risk of losing at trial, including the enormous costs, and the potential to overcome a high standard on any appeal.

Ultimately, the parties reached a settlement in the amount of one million five hundred thousand dollars ($1,500,000.00) to resolve all issues. Plaintiff contends that the settlement is fair and was discounted based on the risk of not getting the case certified and the defenses that Defendant believed would not allow the case to be certified. (Mahoney Declaration ¶ 5-12.)

## VII.   CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

The Parties have stipulated that the court may, for settlement purposes only, certify a Settlement Class. A proposed class may be conditionally certified if it "satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. (*Hanlon*, *supra*, 150 F.3d at p. 1019.)

MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Numerosity

Federal Rule of Civil Procedure 23 (a)(1) requires that the class is so numerous that joinder of all members is impracticable.  Numerosity does not require that joinder of all Members be impossible, but only that joinder be impracticable. (*Arnold v. United Artists Theatre Circuit, Inc.* (N.D. Cal. 1994) 158 F.R.D. 439, 440.) In this matter, the Settlement Class includes approximately 3,225 current and former employees, and therefore, numerosity is easily established.

Additionally, the proposed class must be ascertainable, and must identify, "a distinct group of plaintiffs whose members can be identified with particularity." (*Lerwill v. Inflight Motion Pictures, Inc.* (9th Cir. 1978) 582 F.2d 507, 512.)  Here, the members of the proposed class can easily be identified through Defendant's own timekeeping and payroll records.  Therefore, the settlement class is both sufficiently numerous and ascertainable.

### B.   Common Issues of Law and Fact

The commonality requirement is met if there are questions of law and fact common to the class. (See *Hanlon*, *supra*, 150 F.3d at p. 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").  Here, for purposes of the Settlement only, the parties agree that common factual and legal issues include, among other things: (1) whether Defendant engaged in a common course of failing to provide and/or compensate employees for all overtime hours worked, and for all required meal and rest periods; and (2) whether these alleged violations resulted in ancillary violations of Lab. Code, § 203, and 226, as well whether they justify penalties under PAGA and support the basis for relief under the UCL.  Furthermore, all Class Members suffer from, and seek redress for, the same alleged injuries.  Under these specific circumstances, and for settlement purposes only, the commonality requirement is satisfied. (See *Id.* at p. 1019–20.)

### C.     Typicality

The typicality requirement is met if the claims of the name representative is typical of those of the class, though "they need not be substantially identical." (See *Hanlon*, *supra*, 150 F.3d at p. 1020; *Classen v. Weller*, 145 Ca1. App. 3d 27, 46-47 (1983).)  Courts have held that typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of typicality. (*General Telephone Co. of Southwest v. Falcon* (1982) 457 U.S. 147; *Wehner v. Syntex Corp.* (N.D. Cal. 1987) 117 F.R.D. 641, 644.) In this case, Named Plaintiff is clearly a member of the proposed settlement class and alleges identical claims as other class members and seeks the similar damages as other current and former employees.  Therefore, typicality is easily met in this matter.

### D.     Adequacy of Representation

The adequacy requirement is met if the class representative and class counsel have no interests adverse to the interests of the proposed class members and are committed to vigorously prosecuting the case on behalf of the class. (See *Hanlon*, *supra*, 150 F.3d at p. 1020; *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450–51.)

Plaintiff and his counsel have fairly and adequately represented the proposed settlement class, and have vigorously prosecuted this action on behalf of the proposed settlement class.  Plaintiff and his counsel do not have any claims or interests which conflict or are antagonistic to the class.  The adequacy requirement is met where, as here, the class representatives' claims are sufficiently interrelated to and not antagonistic to the claims of the class.  (*Hanlon*, *supra*, 150 F.3d at p. 1020.)

The proposed Settlement Agreement requests enhancement awards of seven thousand five hundred dollars ($7,500.00) to Plaintiff Mario Zamarripa upon approval by this Court.  Other than this payments, class counsel's attorneys' fees and costs, the settlement administrator's fees, and the payment to the LWDA for its

share of the settlement of penalties, all of the Class Members will be entitled to a portion of the balance of the Gross Settlement Amount based on the formula as provided for in the Settlement Agreement. Thus, no "settlement allocation" questions are raised. (See *Hanlon*, *supra*, 150 F.3d at p. 1020.) Moreover, "[p]otential Plaintiffs are not divided into conflicting discrete categories," since they all claim additional wages for work they performed in California for Defendant. (See *Id.* at p. 1021.) Finally, any class member who wishes to "opt out" of the Settlement may do so. (See *Ibid.*) There is therefore no conflict of interest between Plaintiffs and the class members.

Furthermore, class counsel is an experienced wage and hour class action litigator and have diligently prosecuted this action for nearly two years. (See Declarations of Class Counsel, Kevin Mahoney). There is no evidence of antagonism between the proposed class representative, his attorneys, and the putative class, and even if there were, any putative class member who wishes to "opt-out" would be afforded the opportunity to do so.

Therefore, the requirements of Fed. R. Civ. P. 23(a) are met in this matter.

## E. Conditional Certification Pursuant to FRCP 23(b)(3) is Appropriate as Common Questions Predominate

Under Fed. R. Civ. P 23(b)(3), a Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy. (Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(b)(3).) This requirement is met in this instant matter. When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only. (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620.) The manageability of trying the case as a class action is not a factor for a settlement-only class. (*Id.* at p. 620.)

FRCP 23(b)(3) focuses on the relationship between common and individual

21

MEMORANDUM OF POINTS AND AUTHORITIES

issues, and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. (*Hanlon*, *supra*, 150 F.3d at p. 1022.) In this matter, Plaintiff alleges that due to Defendant's uniform and consistent policies and practices, employees were not paid all straight time or overtime wages for all hours worked and were not provided with all required meal and rest periods.  The proposed class in this case is sufficiently cohesive because, for purposes of the Settlement only, the parties agree that all class members share a "common nucleus of facts and potential legal remedies," as was present in *Hanlon*, *supra*, 150 F.3d 1011, where the Ninth Circuit approved class certification under the standards set forth in *Amchem*.

Plaintiff, on behalf of himself and class members, seek among other things, minimum wages for all hours worked under California law; have common questions about the policies of Defendant, and the class members' potential legal remedies are identical. Thus, this class may be certified for settlement purposes. Furthermore, it would be preferable to resolve all of the class members' claims by means of the Settlement than to require each class member to litigate his or her individual claims.

## VIII. THE PROPOSED NOTICE IS APPROPRIATE AND SATISFIES DUE PROCESS

Federal Rules of Civil Procedure, rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." "The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," is required. (Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(c)(2)(B).) The proposed Class Notice is attached to the Stipulated Settlement as Exhibit "1" (Mahoney Decl. ¶ 4.)

In this case, the Parties propose that the Notice of the Settlement will be mailed via U.S. first-class mail to the Class Member's last known address.

Defendant agrees to provide the Claims Administrator, within fifteen (15) business days following preliminary approval by this Court, a Microsoft Excel spreadsheet containing each Class Member's: (a) full name; (b) last known home address; (c) last known home telephone number (or mobile number if there is no home number on file); (d) Social Security Number (last four digits only); and (e) total number of workweeks worked for Defendant in California during the Class Period.

The Claims Administrator will perform a search on the U.S. Postal Service National Change of Address Database and update any addresses with any new information found regarding the location of Class Members.

Within thirty (30) days of receiving the database of class members, the Claims Administrator will send via first class mail the Court-approved Class Notice and related Settlement documents to each Class Member. If a Notice is returned because of an undeliverable address, the Claims Administrator will conduct a skip trace to locate a current address.

The proposed class notice provides information on the meaning and nature of the proposed settlement class; the terms and provisions of the Settlement; the relief the Settlement will provide to class members; the applications of Plaintiff for his class representative payment and of class counsel for their attorneys' fees and costs; the payment to the LWDA of its share of the settlement of penalties; the payment of the settlement administrator's fees; the date, time and place of the final settlement approval hearing; and the procedure and deadlines for submitting claims, opting out of the Settlement or for submitting comments and objections.

The class notice also fulfills the requirement of neutrality in class notices. It summarizes the proceedings to date, and the terms and conditions of the Settlement, in an informative and coherent manner, in compliance with the Manual's statement that "the notice should be accurate, objective, and understandable to Class Members." The class notice clearly states that the Settlement does not constitute an admission of liability by Defendant, and recognizes that the Court has not ruled

on the merits of the action.  It also states that the final settlement approval decision has yet to be made.  Accordingly, the class notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  *See* Fed. Rules Civ.Proc., rule 23, 28 U.S.C.A.(c)(2); 23(e).

## IX.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement.  At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval; members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement Agreement.  The parties propose that the final approval hearing be held on a date approved by the Court.

## X.    SETTLEMENT    AGREEMENT    AND    ACCOMPANYING DOCUMENTS

Attached as Exhibit "A" to the Declaration of Kevin Mahoney is a true and correct copy of the Joint Stipulation of Class Action Settlement. Attached as Exhibits "1" and "1b" to the fully executed Joint Stipulation are true and correct copies of the potential alternative Notice of Class Action Settlement. Attached as Exhibit "2" to the Joint Stipulation of Class Action Settlement is a true and correct copy of the potentially applicable Claim Form. Attached as Exhibits "3" and "3b" to the Joint Stipulation of Class Action Settlement are true and correct copies of the potential alternative Preliminary Approval Order. Attached as Exhibits "4" and "4b" to the Joint Stipulation of Class Action Settlement are true and correct copies of the potential alternative Final Judgment and Order of Dismissal with Prejudice. (Mahoney Decl. ¶ 4.)   In the event the Court rules that Class Members may effectuate a release of FLSA claims simply by cashing and/or depositing their settlement checks, the Parties agree the exhibits to be used in the settlement are

Exhibits "1b", "3b," and "4b". If the Court does not make such a ruling, the exhibits to be used in the settlement are Exhibits "1" through "4".

## XI.    CONCLUSION

For the foregoing reasons, the Parties respectfully request the Court grant the following:

1.    Preliminary approval of the Settlement;

2.    Approval as to form and content the proposed Notice of Settlement;

3.    Direct the mailing of the Notice of Settlement by first class mail to members of the settlement class;

4.    Preliminary appointment of Plaintiff and Class Counsel as representatives of the Settlement Class.

5.    Preliminary approval of settlement administration services to be provided by Phoenix Class Action Administration Solutions;

6.    Preliminary approval of the proposed Class Representative Enhancement Award to Plaintiff;

7.    Preliminary Approval of the LWDA PAGA Allocation of seven thousand five hundred dollars ($7,500.00) from the Gross Settlement Fund for the compromise of claims brought under the Private Attorneys General Act of 2004;

8.    Preliminary approval of the application of payment of the Class Counsel Award and Class Counsel Costs to Class Counsel;

9.    Scheduled a hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the Settlement Class Members (the "Final Approval Hearing.") for a date to be determined by the Court.

Dated: January 28, 2019            **MAHONEY LAW GROUP, APC**


By:    */s/ Kevin Mahoney*
        Kevin Mahoney, Esq.
        Attorneys for Plaintiff

**MEMORANDUM OF POINTS AND AUTHORITIES**