Kevin Mahoney (SBN 235367)
kmahoney@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 East Ocean Boulevard, Suite 814
Long Beach, California 90802
Telephone: (562) 590-5550
Facsimile: (562) 590-8400

Attorneys for Plaintiff MARIO ZAMARRIPA, as individuals and on behalf of all employees similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ZAMARRIPA, as an individual and on behalf of all similarly situated employees,<br><br>            Plaintiff,<br><br>v.<br><br>MONDELĒZ GLOBAL, LLC and DOES 1 through 50, inclusive,<br><br>            Defendant. | Case No.: 8:16-cv-02193<br><br>**PLAINTIFF MARIO ZAMARRIPA'S UNOPPOSED MOTION FOR CLASS REPRESENTATIVE SERVICE ENHANCEMENT FEES, AND ATTORNEYS' FEES AND COSTS**<br><br>Assigned for all purposes to:<br>Hon. David O. Carter; Courtroom 9D<br><br>Date:         May 13, 2019<br>Time:        8:30 a.m.<br>Courtroom:   9D |

# TABLE OF CONTENTS

I.        INTRODUCTION ........................................................................ 1

II.        SUMMARY OF LITIGATION AND SETTLEMENT............................. 2

    A.        Procedural History..................................................................2

III.        CLASS COUNSEL'S TIME AND EXPENSES ......................................... 4

IV.        VALUE OF THE SETTLEMENT................................................................. 4

V.        THE REQUESTED ATTORNEYS' FEES AND SERVICE
ENHANCEMENT  AWARDS ARE REASONABLE ...................................... 5

    A.        Methods of Determining an Appropriate Fee ........................5

        1.        Percentage-of-the-Fund Method ...........................................7

        2.        The Lodestar Method ............................................................8

    B. Class Counsel's Fee Request is Reasonable Under the Percentage    Method 9

        1.        Class Counsel Obtained an Exceptional Result for the Class...............9

    C. Class Counsel's Request is in Line with Awards Made in Similar Cases ....10

    D. Class Counsel's Fee Request Is Also Reasonable Under the Lodestar  .........
Method ........................................................................................11

        1.        Class Counsel's Lodestar is Reasonable ............................................11

        2.        Class Counsel's Hours Spent on This Matter Is Reasonable.............12

        3.        Class Counsel's Hourly Rates are Reasonable ...................................12

    E. Class Counsel Should Be Reimbursed for Expenses ....................................13

    F. The Class Representatives Should Receive a Service Enhancement Payment for
Their Efforts in Helping Secure the Settlement for the Entire Class......................13

VI.        CONCLUSION ........................................................................... 15

**TABLE OF AUTHORITIES**

Federal Cases

*Ackerman v. Western Elec. Co., Inc.*, (9th Cir. 1988) 860 F.2d 1514 ........................... 12

*Adoma v. University of Phoenix, Inc.*, (E.D. Cal. 2012) 913 F.Supp.2d 964 .................. 8

*Barbosa v. Cargill Meat Solutions Corp.*, (E.D. Cal. 2013) 297 F.R.D. 431....... 8, 10, 13

*Behrens v. Wometco Enterprises, Inc.*, (S.D. Fla. 1988) 118 F.R.D. 534 ..................... 11

*Blum v. Stenson*, (1984) 465 U.S. 886 ...................................................... 6, 12

*Boeing Co. v. Van Gemert*, (1980) 444 U.S. 472 ...................................... 4, 6

*Bogosian v. Gulf Oil Corp.*, (E.D. Pa. 1985) 621 F.Supp. 27 ............................ 14

*Chalmers v. City of Los Angeles*, (9th Cir. 1986) 796 F.2d 1205.................................. 12

*Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920, *7 (C.D. Cal. July 27, 2010). 10

*Cook v. Niedert*, (7th Cir. 1998) 142 F.3d 1004 ............................................ 14

*F & M Distribs., Inc. Sec. Litig.*, No. 95-71778, 1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999)……………………………………………………………….. 13

*Fischel v. Equitable Life Assur. Society of U.S.*, (9th Cir. 2002) 307 F.3d 997 ............. 10

*Harris v. Marhoefer*, (9th Cir. 1994) 24 F.3d 16........................................... 15

*Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *68 (C.D. Cal. June 10, 2005)14

*Hopson v. Hanesbrands Inc.*, (N.D. Cal., Apr. 3, 2009, No. CV-08-0844 EDL) 2009 WL 928133 ....................................................................... 14

*In re Activision Securities Litigation*, (N.D. Cal. 1989) 723 F.Supp. 1373.................... 18

*In re Immune Response Securities Litigation*, (S.D. Cal. 2007) 497 F.Supp.2d 1166 ... 13

*In re Mego Financial Corp. Securities Litigation*, (9th Cir. 2000) 213 F.3d 454 .......... 14

*In re Omnivision Technologies, Inc.*, (N.D. Cal. 2008) 559 F.Supp.2d 1036 ............. 7, 9

*In re Pacific Enterprises Securities Litigation*, (9th Cir. 1995) 47 F.3d 373 ............ 8, 10

*In re Sumitomo Copper Litigation*, (S.D.N.Y. 1999) 74 F.Supp.2d 393........................ 10

*In re Washington Public Power Supply System Securities Litigation*, (9th Cir. 1994) 19 F.3d 1291........................................................................ 7, 10, 11

*Martin v. AmeriPride Svcs., Inc.*, 2011 U.S. Dist. LEXIS 61796 at *27………………14

*Parkinson v. Hyundai Motor America*, (C.D. Cal. 2010) 796 F.Supp.2d 1160 ............ 12

*Paul, Johnson, Alston & Hunt v. Graulty*, (9th Cir. 1989) 886 F.2d 268 ................ 6, 7, 8

*Powers v. Eichen*, (9th Cir. 2000) 229 F.3d 1249 ...................................... 5, 7

*Rodriguez v. West Publishing Corp.*, (9th Cir. 2009) 563 F.3d 948 ............................. 14

*Romero v. Producers Dairy Foods, Inc.*, (E.D. Cal., Nov. 14, 2007, No. 1:05CV0484
 DLB) 2007 WL 3492841 ................................................................... 8

*Schwarz v. Secretary of Health & Human Services*, (9th Cir. 1995) 73 F.3d 895 ......... 12

*Singer v. Becton Dickinson and Co.* (S.D. Cal., June 1, 2010, No. 08-CV-821-IEG
 (BLM)), 2010 WL 2196104 ............................................................... 8

*Six (6) Mexican Workers v. Arizona Citrus Growers*, (9th Cir. 1990) 904 F.2d 1301 . 8, 9

*Smith v. Cardinal Logistics Mgmt. Corp.,* 2011 U.S. Dist. LEXIS 93656 ............... 14

*State of Fla. v. Dunne*, (9th Cir. 1990) 915 F.2d 542 ..........................................6

*Staton v. Boeing Co.*, (9th Cir. 2003) 327 F.3d 938 ........................        6, 7, 14

*Van Vranken v. Atlantic Richfield Co.*, (N.D. Cal. 1995) 901 F.Supp. 294 ................... 8

*Vasquez v. Coast Valley Roofing, Inc.*, (E.D. Cal. 2010) 266 F.R.D. 482 ................... 10

*Vincent v. Hughes Air West, Inc.*, (9th Cir. 1977) 557 F.2d 759 ..................................... 6

*Vizcaino v. Microsoft Corp.*, (9th Cir. 2002) 290 F.3d 1043 ........................... 7, 9, 10, 10

*Williams v. MGM-Pathe Communications Co.*, (9th Cir. 1997) 129 F.3d 1026 ....... 8, 10


State Cases

*Beasley v. Wells Fargo Bank*, (1991) 235 Cal.App.3d 1407 ........................................ 13

*Laffitte v. Robert Half Internat. Inc.*, (2016) 1 Cal.5th 480 ............................................ 5

*Serrano v. Priest*, (1977) 20 Cal.3d 25 .......................................................... 6


Federal Rules

Federal Rule of Civil Procedure, rule 23(h) ............................................................ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On February 13, 2019, this Court preliminarily approved the class action settlement agreement negotiated between Defendant MONDELĒZ GLOBAL, LLC ("Defendant") and Plaintiff MARIO ZAMARRIPA ("Plaintiff") (collectively referred to herein as "the Parties"). (See Docket No. 30)  Now, after over two (2) years of litigation, which included formal and informal discovery, as well as, mediation, and continued arm's length negotiations that resulted in Settlement, Class Counsel move for an award of: (1) attorneys' fees in the amount five hundred thousand dollars ($500,000.00); (2) reimbursement of litigation costs totaling seventeen thousand nine hundred forty one dollars and seventy-seven cents ($17,941.77); (3) Claims Administrator expenses of twenty-five thousand dollars ($25,000.00); and (4) a seven thousand five hundred dollar ($7,500.00) service enhancement award to Plaintiff Mario Zamarripa.  These requests are in accordance with the terms of the preliminarily approved settlement. Furthermore, Defendant has agreed not to oppose these requests.

The attorneys' fees requested are reasonable whether the Court evaluates the request under the percentage-of-the-benefit method or the lodestar method of awarding attorneys' fees in class action matter.  The benefit of the Settlement to class members, which is the direct result of Class Counsel's efforts, is substantial.  After deductions for attorneys' fees, costs, administration expenses, service enhancements, and payment to the LWDA, the Settlement establishes a guaranteed and non-reversionary cash fund of approximately, nine hundred forty thousand dollars ($940,000.00). (Elizabeth Kruckenberg Decl. "Kruckenberg Decl." ¶ 11.)

The Settlement will yield real cash payments to Class Members.  Furthermore, the settlement amount does not reflect the fact that current and future employees of Defendant will likely benefit by a change in Defendants' compensation and other employment practices as a result of this litigation.

The requested fee is a fair percentage of the common fund and is reasonable

1

considering the undertaking of a complex, risky, expensive, and time-consuming litigation on a contingent basis.  The requested fees are reasonable and the results achieved for the class are excellent.  Class Counsel respectfully requests that the Court enter an order to that effect.

Class Counsel's has worked no less than 325.50 hours, for a lodestar of one hundred seventy-nine thousand six hundred twenty dollars ($179,620.00). As a result, the five hundred thousand dollars ($500,000.00) in fees requested requires a multiplier of 2.78, and therefore, should be approved by this Court whether it is evaluated under the percentage-of-the-fund or lodestar method.  Furthermore, the seventeen thousand nine hundred forty-one dollars and seventy-seven cents ($17,941.77) in litigation costs is reasonable and represents hard costs advanced by Class Counsel, and is less than the twenty thousand dollars ($20,000.00) set out in the Settlement Agreement (Settlement Agreement ¶ 7(b)).  Additionally, the cost of administering the settlement by Phoenix of twenty-five thousand dollars ($25,000.00), is a reasonable and standard amount for this class size of approximately 3350 class members (Kruckenberg Decl. ¶ 12).

Lastly, the Class Representative Service Enhancement request is reasonable as the Class Representative was diligent and active in this litigation and was essential in securing the benefits delivered to Class Members through the Settlement.  The requested service enhancement award is more than reasonable given the class representative's considerable risks they accepted in pursuing this litigation.

## II.      SUMMARY OF LITIGATION AND SETTLEMENT

### A.      Procedural History

On or about October 21, 2016, Plaintiff filed a class action lawsuit against Defendant in the Superior Court of California, County of Orange on behalf of all non-exempt positions as including but not limited to merchandisers, sales representatives and related positions employed by Defendant. Plaintiffs' operative Complaint asserts class claims for: (1) failure to pay minimum overtime under California Labor Code §§ 1194 and 1194.2; (2) failure to provide meal periods under California Labor Code §§ 226.7

and 512; (3) failure to provide rest periods under California Labor Code §§ 226.7 and 512; (4) failure to keep accurate payroll records under California Labor Code § 226; (5) failure to pay wages of terminated or resigned employees under California Labor Code § 203; (6) failure to reimburse for necessary business expenditures under California Labor Code § 2802; (7) unfair business practices under California Business and Professions Code §§ 17200, et. seq.; and (8) violation of the California Private Attorneys General Act under California Labor Code §§ 2698-2699.

On or about December 12, 2016, Plaintiff received Defendant's answer to Plaintiff's complaint. On December 16, 2016, Plaintiffs received Defendant's Notice of Removal to Federal Court pursuant to 28 U.S.C. section 1332(d) and 1441 (a)-(c). On March 22, 2017, Plaintiff served set one of discovery, which included Request for Production of Documents and Special Interrogatories.

Shortly thereafter, the Parties agreed to discuss the possibility of early resolution. Defendant agreed to produce a sampling of class payroll data as well as its polices during the relevant class period.  On July 26, 2017, the Parties attended mediation with Robert J. Kaplan of Judicate West, an experienced and well-known class action mediator. This Action did not settle at the mediation, but through Mr. Kaplan, continued settlement dialogue, and agreed to informally stay outstanding discovery to allow further settlement discussions.

The Parties continued their settlement discussions through the use of Mr. Kaplan. In August, 2017, Plaintiff's counsel again reached out to Mr. Kaplan as to status. As a point of contention, Plaintiff's counsel was seeking further verifying information. However, Mr. Kaplan was out of the office until approximately September 2017.

The discussions continued until approximately March 2018, wherein, counsel for Defendant was still pulling the relevant data necessary to provide Plaintiff's counsel with necessary information.

On or about May 2017, the Parties were able to execute a Memorandum of Understanding. The Parties thereafter began to negotiate the terms of the Long Form

Settlement Agreement, for several months, once again re-engaging the mediator due to a disagreement with the terms of the Long Form Settlement Agreement.

The Parties ultimately resolved the issues and subsequently Plaintiff filed his Motion for Preliminary Approval on January 29, 2019, and this Court entered an order granting the same on February 13, 2019.

## III.  CLASS COUNSEL'S TIME AND EXPENSES

Plaintiff's counsel expended significant time and out-of-pocket litigation expenses in securing the Settlement for class members.  The lodestar of Plaintiffs' counsel, to date, one hundred seventy-nine six hundred twenty dollars ($179,620.00).[1]  The reasonable litigation expenses incurred to date equals seventeen thousand nine hundred forty-one dollars and seventy-seven cents ($17,941.77), in addition to the twenty-five thousand dollars ($25,000.00) owed to Phoenix for the Administration of this matter.  (Mahoney Decl. ¶ 4, 23, 24.)

## IV.  VALUE OF THE SETTLEMENT

The Settlement agreement confers substantial benefit to the class.  The Settlement creates a one million five hundred thousand dollars ($1,500,000.00) settlement fund to pay class member claims, attorneys' fees, costs, service enhancement awards, payment to the LWDA, and administration expenses. Assuming that the full amount of the requested attorneys' fees and costs are ordered as set forth in the Settlement agreement, the total Net Settlement Amount is approximately nine hundred forty thousand dollars ($940,000.00).  As there are approximately three thousand five hundred fifty (3550) class members, the highest individual settlement payment to be paid will be approximately one thousand three hundred sixty dollars and seventy-four cents ($1,360.74), and the lowest individual settlement payment to be paid will be approximately twenty-eight cents

[1] A complete lodestar analysis and detailed billing history is attached to the Declaration of Kevin Mahoney as Exhibit A.  The total expenses incurred by Plaintiffs' Counsel are attached to the Declaration of Kevin Mahoney as Exhibit B.  These amounts will increase given the future work still needed to complete the Settlement Process and obtain final approval, however, some anticipated costs are included.  In addition, should a Class Member file an objection, Class Counsel will have to spend significant additional time addressing those issues.

($0.28), with the average individual settlement payment to be paid being approximately two hundred sixty-five dollars and twenty-four cents ($265.24), without applicable taxes, withholdings, and employee garnishments..  (Kruckenberg Decl. ¶ 11.)

Significantly, to date, there have been six (6) opt-outs and zero (0) objections to the proposed settlement.  (Kruckenberg Decl. ¶¶ 8, 9.)

## V.   THE REQUESTED ATTORNEYS' FEES AND SERVICE ENHANCEMENT AWARDS ARE REASONABLE

Federal Rule of Civil Procedure, rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or the parties' agreement.  Fed. R. Civ. Proc. 23(h).

The Settlement agreement anticipates Class Counsel moving for an award of up to five hundred thousand dollars ($500,000.00) in attorneys' fees and Defendant has agreed not to oppose Class Counsel's application for fees up to that full amount.  As shown below, the requested fee award is reasonable under both the lodestar method and percentage-of-the-fund method for approving attorneys' fees.

As shown herein, one hundred seventy-nine six hundred twenty dollars ($179,620.00) represents Class Counsel's base lodestar; the costs incurred by counsel and sought here, a total of seventeen thousand nine hundred forty-one dollars and seventy-seven cents ($17,941.77) are relatively modest and reasonable given the scope and length of this case.  The amount of attorney fees requested by Class Counsel requires a multiplier of 2.78.

### A.   Methods of Determining an Appropriate Fee

"[W]hen class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." *Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 503. The Parties' Joint Stipulation of Class Action Settlement and Release ("Settlement") calls for a Maximum Settlement Amount of one million five hundred

thousand dollars ($1,500,000.00) for the benefit of participating settlement class members. Plaintiffs' counsel is requesting one-third of that common fund as attorney's fees, for the successful prosecution and resolution of this action.

Both California state and federal courts have recognized that an appropriate method for determining an award of attorneys' fees is based on a percentage of the total value of benefits to Class Members by the settlement, not the amount claimed. *Serrano v. Priest* (1977) 20 Cal.3d 25, 34; *Boeing Co. v. Van Gemert* (1980) 444 U.S. 472, 478; *Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759. The purpose of this equitable doctrine is to avoid unjust enrichment of counsel and to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Vincent*, *supra*, 557 F.2d at p. 769.

In *Blum v. Stenson* (1984) 465 U.S. 886, 900, the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class." Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*, *supra*, 444 U.S. at p. 478.

In the Ninth Circuit, a district court may ascertain the reasonableness of an award of attorney fees from a common fund by applying either of two methods: (1) the percentage-of-the-benefit method; or (2) the lodestar with multiplier method. *Fischel v. Equitable Life Assur. Society of U.S.* (9th Cir. 2002) 307 F.3d 997, 1006; *Paul, Johnson, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268; *State of Fla. v. Dunne* (9th Cir. 1990) 915 F.2d 542, 545.

Generally, under the percentage method, a court assesses the amount of the common fund by determining the value of the benefits that the settlement confers upon the class and then awards a percentage of the fund as attorneys' fees. *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 974–975.

Under the lodestar method, a court "calculates the fee award by multiplying the

number of hours reasonably spent by a reasonable hourly rate and then enhancing the figure, if necessary, to account for the risks associated with the representation." *Paul, Johnson, Alston & Hunt*, *supra*, 886 F.2d at p. 272.

Regardless of which of the two methods is used, the award must be reasonable when considered in light of the circumstances of a particular case. *In re Washington Public Power Supply System Securities Litigation* (9th Cir. 1994) 19 F.3d 1291, 1296 ("Whether a court applies the lodestar or the percentage method, we require only that fee awards in common fund cases be reasonable under the circumstances.")

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an attorneys' fee award is reasonable and whether a departure from that figure is warranted, including: (1) the results obtained; (2) the risk of the litigation; (3) the skill required and the quality of work; (4) the continent nature of the fee; and (5) awards in similar cases. *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047, 1048–1050.

### 1.   Percentage-of-the-Fund Method

Under the Percentage-of-the Fund Method, a court will access the amount of the common fund by determining the value of the benefits that the settlement generates for the class and then awards a percentage as attorneys' fees. *Staton*, *supra*, 327 F.3d at p. 974–975.

In the Ninth Circuit, the typical range for attorneys' fees is 20% to 33 1/3% of the total settlement fund, with 25% considered to be the benchmark. *Powers v. Eichen* (9th Cir. 2000) 229 F.3d 1249, 1256.   The percentage may be adjusted upwards to account for special or unusual circumstances. *Paul, Johnson, Alston & Hunt*, *supra*, 886 F.2d at p. 272.

"However, in most common fund cases, the award exceeds [the 25%] benchmark." *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F.Supp.2d 1036, 1047 citing

*In re Activision Securities Litigation* (N.D. Cal. 1989) 723 F.Supp. 1373, 1377[2] Furthermore, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311.

In many cases involving funds of less than $10 million, the percentage awarded can range from 30% to 50%. *Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901 F.Supp. 294, 297–98 Indeed, courts in this circuit have approved percentages of 30% or higher. See e.g. *In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378–79(approving attorneys' fees of 33 1/3%); *Williams v. MGM-Pathe Communications Co.* (9th Cir. 1997) 129 F.3d 1026, 1027 (approving award of 33 1/3%).

Furthermore, Courts within the Ninth Circuit have routinely approved of awards in the 30 to 33 1/3% range for wage and hour class action cases. See *Barbosa v. Cargill Meat Solutions Corp.* (E.D. Cal. 2013) 297 F.R.D. 431(citing to nine cases where courts awarded 30 to 33 1/3% in wage and hour class action cases); *Singer v. Becton Dickinson and Co.* (S.D. Cal., June 1, 2010, No. 08-CV-821-IEG (BLM)) 2010 WL 2196104, at *8(awarding 33 1/3% attorneys' fee award in wage and hour class action); *Romero v. Producers Dairy Foods, Inc.* (E.D. Cal., Nov. 14, 2007, No. 1:05CV0484 DLB) 2007 WL 3492841(approving attorneys' fee award of 33 1/3% in wage and hour class action); *Adoma v. University of Phoenix, Inc.* (E.D. Cal. 2012) 913 F.Supp.2d 964(awarding 33 1/3% in wage and hour class action settlement).

2. <u>The Lodestar Method</u>

Under the lodestar method, a court "calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation. *Paul,*

---

[2] "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%." *In re Activision Securities Litigation, supra,* 723 F.Supp. at p. 1377–78.

*Johnson, Alston & Hunt*, *supra*, 886 F.2d at p. 272. The lodestar method gives a measure of counsel's time and investment in the case and may provide "a check of the reasonableness of [a] percentage award . . . the lodestar calculation can be helpful in suggesting a higher percentage when the litigation has been protracted." *Vizcaino*, *supra*, 290 F.3d at p. 1050–1051.

**B.    Class Counsel's Fee Request is Reasonable Under the Percentage Method**

1.    <u>Class Counsel Obtained an Exceptional Result for the Class</u>

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Technologies, Inc.*, *supra*, 559 F.Supp.2d at p. 1046. As described above, Class Counsel has pursued this litigation and invested significant time and resources despite the numerous hurdles it faced, from questions of jurisdiction and venue and challenges to Plaintiff's theories of liability as well as Defendant's defenses all the way through final approval of this settlement.  At all times throughout this litigation, Defendant was represented by highly competent counsel.

The proposed settlement calls for Defendants to pay a Maximum Settlement Amount of one million five hundred thousand dollars ($1,500,000.00).  After deducting the proposed attorneys' fees and costs, settlement administration costs, service enhancement awards, and payment to the LWDA, the Net Settlement Amount is approximately nine hundred forty thousand dollars ($940,000.00), with the average net distribution to individual class members is two hundred sixty-five dollars and twenty-four cents ($265.24) (Kruckenberg Decl. ¶11).

Class Members will obtain real money as a result of the proposed settlement. Exceptional results are a relevant circumstance in determining an attorneys' fee award. *Vizcaino*, *supra*, 290 F.3d at p. 1048.  Class Counsel was able to obtain this settlement as a result of their considerable experience in prosecuting similar wage and hour class actions.  (See Mahoney Decl.¶¶ 16, 17, 18, 19).  To date, there have been six (6) opt-outs of the settlement and zero (0) objections to the settlement.  (Kruckenberg Decl. ¶8, 9).

The excellent result obtained for the class in this case supports the requested attorneys' fee award.

Class Counsel took on this case on a contingent basis and aggressively litigated it since its inception. (Mahoney Decl. ¶ 6). Litigating a case on a contingent basis presents considerable risk. *Barbosa*, *supra*, 297 F.R.D. at p. 450; *In re Sumitomo Copper Litigation* (S.D.N.Y. 1999) 74 F.Supp.2d 393, 396–398. "Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *68 (C.D. Cal. June 10, 2005). Courts have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing for their work. *In re Washington Public Power Supply System Securities Litigation*, *supra*, 19 F.3d at p. 1299; *Vizcaino*, *supra*, 290 F.3d at p. 1050.

Here, Class Counsel's prosecution of this case on a contingency basis presented a great amount of risk, and therefore supports an award of 33 and 1/3% of the common fund.

**C.    Class Counsel's Request is in Line with Awards Made in Similar Cases**

As shown above, courts in this circuit have approved percentages of 30% or higher. See e.g. *In re Pacific Enterprises Securities Litigation*, *supra*, 47 F.3d at p. 378–79(approving attorneys' fees of 33 1/3%); *Williams*, *supra*, 129 F.3d at p. 1027 (approving award of 33 1/3%). Class Counsel's request in this case falls in line with awards made in similar wage and hour class actions. See *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920, *7 (C.D. Cal. July 27, 2010) ("[a] review of California cases in other districts reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million."[3]

---

[3]See also *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, citing five cases in which fee awards in wage and hour class actions were 30% - 33.3 %.

**D.** **Class Counsel's Fee Request Is Also Reasonable Under the Lodestar Method**

      1.   <u>Class Counsel's Lodestar is Reasonable</u>

Class Counsel requests a fee of five hundred thousand dollars ($500,000.00). "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, *supra*, 290 F.3d at p. 1050. A court may presume that the lodestar "provides an accurate measure of reasonable attorneys' fees." *Harris v. Marhoefer* (9th Cir. 1994) 24 F.3d 16, 18.

The excellent results obtained for the class, the complexities of the legal issues involved, and the substantial work performed by Class Counsel justify this base lodestar.

Furthermore, the contingent nature of the Class Counsel's representation supports the application of a higher, positive multiplier. In this case Plaintiffs' counsel seeks a multiplier of 2.78. See *In re Washington Public Power Supply System Securities Litigation*, *supra*, 19 F.3d at p. 1299–1300("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normally hourly rates for winning contingency fee cases. . .[i]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks recovering nothing." Citing *Behrens v. Wometco Enterprises, Inc.* (S.D. Fla. 1988) 118 F.R.D. 534, 548).

In this case, as shown above, Class Counsel litigated contested issues that were complex and required skillful maneuvering. In so doing, Class Counsel engaged in discovery, retained an expert for analysis of pay data, and was able to speak with potential class members, conducted extensive protracted settlement negotiations, and obtained preliminary approval in this matter.

Class Counsel has expended significant professional time and out-of-pocket expenses litigating this case and securing the proposed settlement for the class.

Moreover, Class Counsel continues to work on this matter by ensuring an efficient claims administration process.  Further work has completed in the preparation of Plaintiff's concurrently filed Motion for Final Approval and will continue with the complete overall administration of the settlement, all which supports the requested attorneys' fee award.

2.   Class Counsel's Hours Spent on This Matter Is Reasonable

The hours worked by Class Counsel are documented in the concurrently filed Declaration of Kevin Mahoney.  The lodestar does not include all hours worked as Class Counsel exercised billing judgment regarding its hours worked.  In this case, Class Counsel expended a total of 325.50 hours on this matter.  (Mahoney Decl. ¶ 4.)

3.   Class Counsel's Hourly Rates are Reasonable

Class Counsel specializes in wage and hour class action and is well qualified and competent in this field.  (Mahoney Decl. ¶ 19). Courts "must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles* (9th Cir. 1986) 796 F.2d 1205, 1210. The reasonable rate is derived from the reasonable market value of their services in the community.  *Blum*, *supra*, 465 U.S. at p. 895. The relevant community is that in which the district court sits.  *Schwarz v. Secretary of Health & Human Services* (9th Cir. 1995) 73 F.3d 895, 906. "Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor America* (C.D. Cal. 2010) 796 F.Supp.2d 1160, 1172; *Ackerman v. Western Elec. Co., Inc.* (9th Cir. 1988) 860 F.2d 1514.

In this case, the hourly billing rate for Kevin Mahoney, principal of Mahoney Law Group, APC, is seven hundred fifty dollars ($750.00) per hour; the hourly billing rates for associates at Mahoney Law Group, APC is four hundred fifty dollars ($450.00) to seven hundred fifty dollars ($750.00) per hour. These rates have been approved by other Courts. Class Counsel's hourly billing rates for partners and associates are in line with rates that have been approved by other California Courts. (Mahoney Declaration ¶ 23).

12

**E.   Class Counsel Should Be Reimbursed for Expenses**

Pursuant to the Parties' Settlement Agreement, Defendant does not oppose Class Counsel's application for reimbursement of litigation costs. Class Counsel seeks seventeen thousand nine hundred forty-one dollars and seventy-seven cents ($17,941.77) in reimbursement for out-of-pocket expenses incurred during the litigation. (Mahoney Decl. ¶ 24, Ex. B.) Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of the case. "Expense awards are customary when litigants have created a common settlement fund for the benefit of the class." *In re F & M Distribs., Inc. Sec. Litig.*, No. 95-71778, 1999 U.S. Dist. LEXIS 11090 at *20 (E.D. Mich. June 29, 1999); see also *In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1177; *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1419–1420; *Barbosa*, *supra*, 297 F.R.D. at p. 454(reasonable costs include travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges.)

Class Counsel has reviewed the accounting records and invoices and can attest to the appropriateness and necessity of the costs.  (Mahoney Decl. ¶ 24.)  The requested expenses and costs are the type routinely billed in similar wage and hour class actions.

**F.   The Class Representatives Should Receive a Service Enhancement Payment for Their Efforts in Helping Secure the Settlement for the Entire Class**

As provided for in the Settlement Agreement, ¶ 7,9, and set forth in the Class Notice, the Class Representatives seek service enhancement payment of seven thousand five hundred dollars ($7,500.00), to Plaintiff Mario Zamarripa.  The request is reasonable considering the efforts put in by Plaintiff and the risks to him personally.

"Incentive awards are fairly typical in class action cases, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk . . . and, sometimes, to recognize their willingness to act as

a private attorney general.*" Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 958–59 Service enhancements are common where the class representative's personal claims alone would never justify the time and effort required to prosecute complex litigation on behalf of the class.  See *Bogosian v. Gulf Oil Corp.* (E.D. Pa. 1985) 621 F.Supp. 27, 32.

In assessing the propriety of a service award, a court may consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions . . .the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable[e] fear [of] workplace retaliation."  *Staton*, *supra*, 327 F.3d at p. 977 quoting *Cook v. Niedert* (7th Cir. 1998) 142 F.3d 1004.

The service enhancement payment requested here takes into consideration the time, effort and risks incurred by the named Plaintiff in coming forward to litigate this matter on behalf of all class members.  In this case, Plaintiff has submitted a declaration in support of the requested service enhancement award. (Declaration of Mario Zamarripa "Zamarripa Decl.")

The total requested Enhancement Payment is extremely small in proportion to the Maximum Settlement Amount, representing in the aggregate less than only 0.005% of the settlement fund.  This is well within the range of reasonableness recognized by the courts.  *See, e.g., In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454, 457, 463 (affirming enhancement awards comprising 0.57% of the settlement fund); *Hopson v. Hanesbrands Inc.* (N.D. Cal., Apr. 3, 2009, No. CV-08-0844 EDL) 2009 WL 928133, at *10 (granting final approval of a settlement providing for enhancement payments that represented 1.25% of the settlement fund); *see also Martin v. AmeriPride Svcs., Inc.*,, 2011 U.S. Dist. LEXIS 61796 at *27 (awarding $148,000.00 in enhancement payments out of a settlement of $5.25 million, or 2.8% of the total settlement amount); *Smith v. Cardinal Logistics Mgmt. Corp.,* 2011 U.S. Dist. LEXIS 93656, at *5 (awarding enhancement payments of $15,000 to each of three named plaintiffs out of a settlement of $3.75 million, or 1.2% of the total settlement amount).

In this case, the service enhancement sought is appropriate.  Plaintiff has expended significant time and energy in the prosecution of this case on behalf of the class.  Prior to the filing of his lawsuit, Plaintiff, Mario Zamarripa met with his attorneys to discuss his experiences working for Defendant, the pros and cons of being a class representative, and decided to serve as named Plaintiff in order to represent other employees who were similarly affected by Defendants' practices. (Zamarripa Decl. ¶ 6, 7, 8.)

The Plaintiff made himself available to Class Counsel for the duration of this lawsuit, checking on status and offering assistance to the prosecution of this case. (Zamarripa Decl. ¶ 9). Plaintiff Zamarripa attended in-person meetings with his attorneys as well as numerous telephone conferences and provided a wealth of information regarding Defendant's practices and policies, gathered relevant documents from his employment with Defendant.  (Zamarripa Decl. ¶ 9).  Furthermore, Plaintiff Zamarripa was available by phone to answer questions that would arise during the mediation. (Zamarripa Decl. ¶ 9). Throughout this litigation, Plaintiff was instrumental in assisting Class Counsel in the prosecution of this case.

Plaintiff Zamarripa has devoted a substantial amount of time and energy in representing the settlement class.  He was always ready, willing, and able to work on behalf of the class and assist Class Counsel at every turn of this litigation.  By doing so, he took significant risk in serving as named Plaintiff, with respect to both industry blacklisting and if Plaintiff had lost at trial, he could have been responsible for Defendant's own costs.  Moreover, Plaintiff Zamarripa also agreed to a much broader release than class members, including agreeing to a general release of all known and unknown claims against Defendant.  (Settlement Agreement ¶¶ 4, 5.)

Based on the foregoing, the requested service enhancement award is reasonable and the Court should approve the service enhancement payments of seven thousand five hundred dollars ($7,500.00) which is a total of 0.05% of the total settlement amount.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel request that this Court

approve payment of five hundred thousand dollars ($500,000.00) in attorneys' fees, reimbursement of litigation costs advanced in this matter of seventeen thousand nine hundred forty-one dollars and seventy-seven cents ($17,941.77) to Class Counsel and twenty-five thousand dollars ($25,000.00) to Phoenix.  Additionally, Plaintiff and Class Counsel request that the Court award a service enhancement payment of seven thousand five hundred dollars ($7,500.00) to Plaintiff Mario Zamarripa.

Dated: April 30, 2019                        Respectfully submitted,
                                             **MAHONEY LAW GROUP, APC**


                                             */s/ Kevin Mahoney*
                                             Kevin Mahoney
                                             Attorneys for Plaintiff and all other similarly situated employees